**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| Joseph Sam, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-2988 |
| | § | |
| Easy Honda and | § | |
| Exeter Finance LLC, | § | |
| | § | |
| *Defendants*. | § | |

**JUDGE PALERMO'S
REPORT AND RECOMMENDATION AND ORDER**[1]

This is a vehicle-repossession case. Defendants Easy Honda and Exeter

Finance LLC ("Exeter") (collectively, "Defendants") move to dismiss Plaintiff

Joseph Sam's amended complaint. ECF Nos. 47 (Exeter's motion),[2] 49 (Easy

Honda's motion).[3] Plaintiff also moves (1) for a show-cause order regarding

sanctions, ECF No. 71, (2) to strike Defendants' motions, ECF No. 72, and (3) for

leave to file a supplemental brief, ECF No. 73.

After considering the parties' briefing and applicable law, the Court finds that

Defendants' motions to dismiss should be granted. Because the Court finds dismissal

---

[1] The district judge to whom this case is assigned referred all pretrial proceedings under 28 U.S.C. § 636(b)(1). ECF No. 7.

[2] Plaintiff filed a response. ECF No. 61 (joint response). Exeter filed a reply. ECF No. 63. Plaintiff filed a sur-reply. ECF No. 69.

[3] Plaintiff filed a response. ECF No. 61 (joint response). Easy Honda filed a reply. ECF No. 62. Plaintiff filed a sur-reply. ECF No. 68.

appropriate, the Court need not reach Plaintiff's remaining motions and thus denies them as moot.

## I.    BACKGROUND

The facts are straightforward. On April 12, 2024, Plaintiff "signed a five-page Retail Installment Sales Contract" ("Contract") with Easy Honda to buy a used 2018 Chevrolet Malibu for about $15,000. ECF No. 61 at 4; ECF No. 47 at 1; ECF No. 42-2 at 3–4. Under the Contract, Plaintiff paid $3000 upfront, financed the remaining purchase price, and the debt and security interest were assigned to Exeter. ECF No. 61 at 4; ECF No. 47 at 1; ECF No. 42 ¶ 17; ECF No. 42-4 at 8 (assignment to Exeter).

At some point over the next year, Plaintiff stopped making his installment payments and defaulted under the Contract. Exeter repossessed the Chevrolet Malibu on July 9, 2025, and later mailed Plaintiff a deficiency notice demanding $7,556.38. ECF No. 42 ¶¶ 61–62.

In his amended complaint, Plaintiff asserts claims for (1) fraud and forgery, (2) Truth in Lending Act ("TILA") violations, (3) Fair Credit Reporting Act ("FCRA") violations, (4) Racketeer Influenced and Corrupt Organizations Act ("RICO") violations, and (5) a constructive trust or equitable disgorgement. ECF No. 42. Defendants move to dismiss under Rule 12(b)(6). ECF Nos. 47, 49.

## II.    DISMISSAL STANDARD UNDER 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes courts to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Gaskin v. Univ. of Hous. Police Dep't*, No. CV H-25-1658, 2025 WL 3514356, at *3 (S.D. Tex. Dec. 8, 2025) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Calogero v. Shows, Cali & Walsh, L.L.P.*, 970 F.3d 576, 580 (5th Cir. 2020)).

In determining a motion to dismiss, "'[c]ourts accept 'all well-pleaded facts as true' and 'view them in the light most favorable to the plaintiff.'" *Id.* (original alteration removed) (quoting *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 177 (5th Cir. 2018)). At this stage, courts may only consider "(1) the facts in the complaint; (2) documents attached to the complaint; and (3) matters of which the court may take judicial notice." *Id.* (citing *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019)).

## III.    PLAINTIFF'S CLAIMS ARE NOT FACIALLY PLAUSIBLE.

### A. Plaintiff's Contradicts His Own Forgery Theory.

The Court begins by crystalizing Plaintiff's theory of the case. As Defendants point out, Plaintiff's amended complaint is technically only 25 pages but

incorporates a "224-page appendix containing various documents and affidavits," making it difficult to discern Plaintiff's precise legal theory. ECF No. 47 at 5; *see generally* ECF No. 42. Thankfully, Plaintiff clarifies his position in his response to Defendants' motions: "**Plaintiff's claims rest on one contention: Defendants forged his signature.**" ECF No. 61 at 3 (emphasis in original). Basically, Plaintiff alleges that he signed the five-page Contract with Easy Honda to buy the Chevrolet Malibu, but then Easy Honda swapped out the Contract with a forged seven-page contract that had different terms before assigning it to Exeter. *Id.* at 10. Plaintiff claims the forged contract contained "a $2,621 Vehicle Service Contract charge that Plaintiff never authorized" and an "amount financed" that he "never agreed to." ECF No. 61-1 at 9. Plaintiff attached both the "authentic" five-page Contract and "forged" seven-page contract to his amended complaint. ECF Nos. 42-2 (five-page Contract), 42-4 (seven-page contract). Importantly, he admits that he signed the "authentic" five-page Contract. ECF No. 42 ¶ 18.

Plaintiff's theory stumbles right out of the gate because the "authentic" Contract and "forged" contract are the same. They both contain the exact same "annual percentage rate," "finance charge," "amount financed," "total of payments," and "total sale price" terms of 24.10%, $12,491, $13,596.76, $26,087.76, and $29,087.76, respectively. *Compare* ECF No. 42-2 at 4, *with* ECF No. 42-4 at 2. They both indicate that Plaintiff made a $3000 down payment. *Id.* And they both include

4

a $2621 vehicle service contract charge. *Compare* ECF No. 42-2 at 5 (listing under "other charges" a $2621 "first service"/"service contract" charge), *with* ECF No. 42-4 at 3 (same). Indeed, every term and provision is the same.

Plaintiff insists that the two contracts cannot be the same because one contains five pages and the other contains seven pages. *See, e.g.*, ECF No. 61 at 3, 5, 7 (pointing out page differences). True enough, it seems Plaintiff signed a five-page document, and Easy Honda transmitted a seven-page document to Exeter. One of the extra pages pertains to optional "life and credit disability insurance." ECF No. 42-4 at 4. This was included in the version Plaintiff signed as a condensed side column. ECF No. 42-2 at 5. Easy Honda expanded it to a full page in the version it transmitted to Exeter but otherwise kept all the same information. *Compare* ECF No. 42-2 at 5 (marking every field in the optional insurance column as "N/A"), *with* ECF No. 42-4 at 4 (same). Ergo, it changed nothing in the Contract.

The other extra page is simply the assignment form, memorializing the fact that Easy Honda assigned the Contract to Exeter. ECF No. 42-4 at 8. It has nothing to do with Plaintiff and does not alter Plaintiff's Contract in any way. Indeed, it does not even contain his signature. *Id.*

To recap, Plaintiff alleges that Easy Honda forged a contract with his signature and that Exeter is now trying to enforce the forged contract. But the documents attached to Plaintiff's own amended complaint prove that the "forged" contract is

the same Contract Plaintiff signed, with all the same terms and conditions. In other words, Plaintiff has not indicated that Defendants changed the terms of the Contact after the fact. Plaintiff's forgery theory is therefore baseless, and he offers no other to support his claims, admitting all his claims "**rest on**" his forgery theory. ECF No. 61 at 3 (emphasis in original).

With Plaintiff's theory clarified, the Court now turns to Plaintiff's individual claims.

### B. Plaintiff Fails to Assert Plausible Claims Against Defendants.

In his amended complaint, Plaintiff asserts claims for (1) fraud and forgery, (2) TILA violations, (3) FCRA violations, (4) RICO violations, and (5) a constructive trust or equitable disgorgement. ECF No. 42. The Court discusses each in turn.

#### i.    *Plaintiff fails to state claims for fraud or forgery.*

Plaintiff fails to state claims for fraud or forgery. As an initial matter, "forgery is not a cognizable, stand-alone civil claim under Texas law." *Kafi, Inc. v. Sand Canyon Corp.*, No. 3:20-CV-00354, 2022 WL 3084480, at *10 (S.D. Tex. Aug. 3, 2022), *adopted*, No. 3:20-CV-00354, 2022 WL 4454395 (S.D. Tex. Sept. 23, 2022). So, to the extent Plaintiff asserts freestanding claims for forgery, they should be dismissed.

Plaintiff's fraud claims fare no better. To establish fraud, a plaintiff must show that "(1) the defendant made a material misrepresentation; (2) the defendant knew at

the time that the representation was false or lacked knowledge of its truth; (3) the defendant intended that the plaintiff should rely or act on the misrepresentation; (4) the plaintiff relied on the misrepresentation; and (5) the plaintiff's reliance on the misrepresentation caused injury." *Wesdem, L.L.C. v. Ill. Tool Works, Inc.*, 70 F.4th 285, 291 (5th Cir. 2023) (quoting *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 228 (Tex. 2019)).

Here, Plaintiff alleges that Easy Honda materially misrepresented the Contract by adding an unauthorized vehicle service contract charge of $2621, "substitute[ing] contract terms; assign[ing] [his] account to Exeter; and create[ing] a basis for repossession." ECF No. 61 at 8 (citing ECF No. 42 ¶¶ 22, 26–27). He maintains that Exeter participated in this fraud and forgery by "knowingly us[ing] and enforce[ing]" the forged contract. ECF No. 42 ¶ 69.[4]

These alleged facts do not support a reasonable inference that either Defendant made a material misrepresentation because, as explained above, the Contract that Plaintiff signed—attached to his amended complaint—*did* contain the $2621 vehicle service contract charge, ECF No. 42-2 at 5, along with all the same payment and financing terms as the contract Honda assigned to Exeter, *compare*

---

[4] Plaintiff also alleges that "Exeter . . . accepted [his] $14,456.68 negotiable instrument, credited the account, then reversed the payment and destroyed the instrument instead of returning it." ECF No. 42 ¶ 76. As explained in more detail below, Plaintiff "expressly abandon[s] any reliance on the 'negotiable instrument.'" ECF No. 61 at 3 (emphasis omitted).

ECF No. 42-2 at 4, *with* ECF No. 42-4 at 2. Moreover, the Contract clearly disclosed that Easy Honda would assign its interest to Exeter, ECF No. 42-2 at 8 ("Seller assigns its interest in this contract to Exeter Finance LLC."), and explained that "[i]f [Plaintiff] default[s], we may repossess the vehicle," *id.* at 6.

Plaintiff also alleges that Easy Honda defrauded him by "misrepresent[ing] that Exeter required a $3,000 down payment, inducing Plaintiff to pay that amount" even though "Exeter later admitted it does not require down payments." ECF No. 42 ¶ 68. Even assuming, as the Court must at this stage, that Exeter did not require a down payment, the fact that Easy Honda told Plaintiff otherwise does not constitute a material representation because Easy Honda did not "falsely promise[] to perform a future act while having no present intent to perform it." *Int'l Bus. Machs.*, 573 S.W.3d at 228 (explaining that "[i]n a fraudulent-inducement claim, the 'misrepresentation' occurs when the defendant falsely promises to perform a future act while having no present intent to perform it"). Easy Honda promised nothing with respect to the down payment; it merely required Plaintiff to put $3000 down to purchase the Chevrolet Malibu, a common condition for vehicle purchases.

Plaintiff's fraudulent-inducement claim further fails because he alleges no facts that permit the Court to reasonably infer that he relied on Easy Honda's statement about Exeter's downpayment requirements. To establish reliance for a fraudulent-inducement claim, the plaintiff must show that the defendant's false

8

promise "'induces' the plaintiff to agree to a contract the plaintiff would not have agreed to if the defendant had not made the false promise." *Id.* Here, Plaintiff alleges no facts suggesting he would not have bought the Chevrolet Malibu if he had *not* been required to make a down payment. If anything, Plaintiff may have been *more* inclined to purchase the vehicle if he were not required to put any money down.

Since Plaintiff fails to allege facts that support a reasonable inference that Defendants made material misrepresentations, Plaintiff has failed to state a plausible claim for fraud under Texas law. Accordingly, his fraud claims should be dismissed.

### ii.     Plaintiff fails to state claims under TILA.

Plaintiff fails to state claims under TILA. To state a claim under TILA, plaintiffs must identify the specific provision that was violated. *Barnes v. Tom Peacock Nissan-Cadillac, Inc.*, No. CV H-23-483, 2023 WL 3594156, at *3 (S.D. Tex. May 2, 2023) (dismissing TILA claim because "the complaint still fails to state either a specific statutory violation or even facts—other than vague allegations— sufficient to support a violation."); *Belay v. Aegis Wholesale Corp.*, No. A-17-CV-545-LY-ML, 2018 WL 1833250, at *4 (W.D. Tex. Jan. 26, 2018) (dismissing TILA claim in part because the plaintiff failed to identify "what particular provision of TILA was violated"), *adopted*, No. 1:17-CV-0545-LY, 2018 WL 1858136 (W.D. Tex. Mar. 14, 2018); *see also Hurt v. Exeter Fin., LLC*, No. 4:23-CV-1285-JSD, 2023 WL 8088601, at *5 (E.D. Mo. Nov. 21, 2023) (denying leave to amend because

"he has failed to articulate the specific provision of TILA he believes was violated").

Here, Plaintiff points to 15 U.S.C. § 1638(a), ECF No. 61 at 10, and claims that "Easy Honda violated TILA by including a $2,621 Vehicle Service Contract in the [Contract] that Plaintiff never authorized or agreed to," thereby "inflat[ing] the amount financed and render[ing] the disclosures materially inaccurate," ECF No. 42 ¶ 84. But § 1638(a) contains nineteen subsections requiring specific disclosures, and Plaintiff does not identify which one Defendants allegedly violated. That is insufficient.

Moreover, as explained above, Plaintiff *did* authorize the $2621 vehicle service contract charge—it was plainly included in the Contract that he signed. ECF No. 42-2 at 5.

Accordingly, Plaintiff has failed to allege sufficient facts to state a plausible TILA claim. His TILA claims should therefore be dismissed.

### iii.    *Plaintiff fails to state claims under FCRA.*

Plaintiff fails to state claims under FCRA. "Congress enacted the FCRA to ensure fair and accurate credit reporting that protects consumers while meeting the needs of commerce." *Schultz v. HomeBridge Fin. Servs., Inc.*, No. 24-50193, 2025 WL 1467431, at *2 (5th Cir. May 22, 2025) (quoting *Hammer v. Equifax Info. Servs., L.L.C.*, 974 F.3d 564, 567 (5th Cir. 2020)). "When a credit reporting agency notifies a 'furnisher' of credit information of a consumer dispute, the furnisher must

'conduct an investigation,' 'report the results of the investigation,' and "modify . . . delete . . .  or . . . permanently block' any inaccuracies." *Id.* (ellipses in original) (quoting 15 U.S.C. § 1681s-2(b)(1)(A)–(E)). "'FCRA allows a plaintiff injured by a negligent reporting violation to . . . recover . . . actual damages,' and actual, statutory, and punitive damages for a willful violation." *Id.* (ellipses in original) (quoting *Smith v. Santander Consumer USA, Inc.*, 703 F.3d 316, 317 (5th Cir. 2012)).

Here, Plaintiff claims that Exeter reported to credit reporting agencies a "90 Day Late" tradeline with "a $14,791 balance, causing [his] credit score to drop by forty-one points." ECF No. 42 ¶ 93. He disputed the reporting but alleges that "Exeter failed to conduct a reasonable investigation and continued to report the account as delinquent, despite records showing Plaintiff paid the loan in full on August 1, 2024, and rescinded the [C]ontract on September 6, 2024." *Id.* ¶ 94. In its response to the Consumer Financial Protection Bureau, Plaintiff contends, Exeter "falsely represented that its reporting was 'accurate.'" *Id.* ¶ 95.

Plaintiff claims he "paid the loan in full" using a "negotiable instrument" or "bill of exchange." ECF No. 42 ¶ 76; ECF No. 42-13 at 3–4. As Defendants point out, though, this was "nothing more than a 'worthless piece of paper.'" ECF No. 47 at 8 (quoting *McClain v. I-10 Mac Haik CDJR Ltd.*, No. 4:21-CV-3240, 2023 WL 361554, at *4 (S.D. Tex. Jan. 23, 2023)). Evidently, Exeter initially accepted the

11

negotiable instrument as payment, ECF No. 42 ¶ 76, which was reflected as a credit to Plaintiff's account, ECF No. 42-14. Once Exeter realized it was not an actual payment, it "reversed the payment." ECF No. 42 ¶ 76.

The big problem for Plaintiff is that he "**expressly abandon[s] any reliance on the 'negotiable instrument' or 'bill of exchange' referenced in [his] filings.**" ECF No. 61 at 2 (emphasis in original). Without those allegations, Plaintiff provides no facts indicating he paid the loan—in full or otherwise—and thus the Court cannot reasonably infer that Exeter's reported $14,791 trade line was inaccurate. Inaccuracy is a threshold requirement for claims FCRA claims under § 1681s-2(b). *Schultz*, 2025 WL 1467431, at *2 (explaining that FCRA requires a furnisher to "modify," "delete," or "permanently block any *inaccuracies*" (internal quotation marks omitted and emphasis added) (quoting 15 U.S.C. § 1681s-2(b)(1)(A)–(E)); *Hall v. LVNV Funding, L.L.C.*, 738 F. App'x 335, 336 (5th Cir. 2018) (affirming summary judgment on FCRA claim in part because the record "does not reflect any *inaccuracy* in the information furnished" (emphasis added)); *see also Reyes v. Equifax Info. Servs., L.L.C.*, 140 F.4th 279, 286 (5th Cir. 2025) (holding that "inaccuracy is a threshold requirement for" claims under a closely related FCRA provision—§ 1681i).

Since Plaintiff has not alleged sufficient facts that, when taken as true, plausibly show Defendants furnished inaccurate information to credit reporting

12

agencies, his FCRA claims should be dismissed.

### iv.   Plaintiff fails to state claims under RICO.

Plaintiff fails to state claims under RICO. To plead a civil RICO claim, a plaintiff must identify (1) "a person, who, (2) through a pattern of racketeering activity, (3) uses or invests income derived therefrom to acquire an interest in or to operate an enterprise engaged in interstate commerce, or acquires, maintains an interest in, or controls such an enterprise." *Nix v. Major League Baseball*, 62 F.4th 920, 931 (5th Cir. 2023) (quoting *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016) (en banc)).

"A 'pattern of racketeering activity' requires 'at least two' [predicate] acts." *Id.* (quoting 18 U.S.C. § 1961(5)). Section 1961(1) lists which criminal acts qualify as predicate acts. 18 U.S.C. § 1961(1). "To establish the 'pattern' element, a plaintiff must 'show both a relationship between the predicate offenses . . . and the threat of continuing activity.'" *Visintine v. Navyarmy Cmty. Credit Union*, No. 2:24-CV-00124, 2024 WL 4720606, at *5 (S.D. Tex. Aug. 29, 2024) (ellipsis in original) (quoting *D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*, 98 F.4th 198, 205 (5th Cir. 2024)), *adopted*, No. 2:24-CV-124, 2024 WL 4819438 (S.D. Tex. Nov. 18, 2024). "Predicate acts are 'related' if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'"

13

*Id.* (quoting *D&T Partners*, 98 F.4th at 205). To prove "continuing activity," a plaintiff can allege either "a 'closed period of repeated conduct' or long-term unlawful 'past conduct that by its nature projects into the future with a threat of repetition.'" *Id.* (quoting *D&T Partners*, 98 F.4th at 205). "Courts have stressed that a single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities is not the type of racketeering pattern RICO seeks to prohibit." *Id.* (quoting *D&T Partners*, 98 F.4th at 207).

Here, Plaintiff alleges that "Easy Honda, Exeter, and Visionary Automotive Management, LLC[,] formed an association-in-fact enterprise to defraud Plaintiff and other customers" by "obtain[ing] money through forged contracts, conceal[ing] the fraud, enforce[ing] false obligations, and monetize[ing] the forged instruments in financial markets." ECF No. 42 ¶¶ 102–03. Plaintiff contends that Defendants' actions constituted mail and wire fraud, satisfying the two-predicate-acts requirement. *Id.* ¶ 104(a)–(b).[5]

Wire fraud "requires proof of (1) a scheme or artifice to defraud, (2) the use of wire communications, and (3) specific intent to defraud." *Visintine*, 2024 WL 4720606, at *6 (quoting *Bustos v. Invierte En Tex., LLC*, No. 4:22-CV-02690, 2024

---

[5] Plaintiff also alleges "Forgery," "Use of Forged Instrument in Litigation," "Securities Fraud," "Fraudulent Payment Reversal," "Document Fraud," and "Concealment by Mail" as predicate acts. ECF No. 42 ¶ 104(c)–(h). These acts, however, are not listed under § 1961(1)'s definition of "racketeering activity" and thus cannot serve as predicate acts.

WL 3364039, at *11 n.27 (S.D. Tex. June 3, 2024)). "The elements of mail fraud . . . are the same but with 'use of the mails.'" *Peel v. cPaperless, LLC*, No. 4:23-CV-02417, 2024 WL 5058609, at *8 (S.D. Tex. Nov. 8, 2024) (citing *United States v. Spalding*, 894 F.3d 173, 181 (5th Cir. 2018)), *adopted*, No. 4:23-CV-02417, 2024 WL 5063667 (S.D. Tex. Dec. 9, 2024). "The 'scheme to defraud' element requires proof that the defendant 'made some kind of false or fraudulent material misrepresentation.'" *Id.* (quoting *Spalding*, 894 F.3d at 181). As discussed above, Plaintiff has not alleged that Defendants made a false misrepresentation because Plaintiff's own amended complaint shows that the contract Plaintiff claims is forged is actually identical to the Contract he signed. *Compare* ECF No. 42-2, *with* ECF No. 42-4. Easy Honda assigning a contract with identical terms to Exeter—although it may have looked slightly different due to formatting changes—does not constitute a scheme to defraud. Thus, Plaintiff fails to plausibly allege either wire or mail fraud.

Because Plaintiff fails to allege two predicate acts, his civil RICO claims should be dismissed.

> ## v. *Plaintiff fails to state claims for a constructive trust or equitable disgorgement.*

Plaintiff fails to state claims for a constructive trust or equitable disgorgement. Plaintiff alleges that "Defendants were unjustly enriched through fraud and forgery" and contends that either a constructive trust or equitable disgorgement are appropriate. ECF No. 42 ¶¶ 109, 111–12.

First, "[a] constructive trust is an equitable remedy created by the courts to prevent unjust enrichment." *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N. A.*, 800 F. App'x 239, 247 (5th Cir. 2020) (quoting *Hubbard v. Shankle*, 138 S.W.3d 474, 485 (Tex. App.—Fort Worth 2004, pet. denied)). "It is not an independent cause of action under Texas law." *Id.*; *WFG Nat'l Title Ins. Co. v. Kavac Holding Co., LLC*, No. 4:18-CV-368, 2019 WL 636722, at *2 n.2 (S.D. Tex. Jan. 22, 2019), *adopted*, No. 4:18-CV-00368, 2019 WL 632754 (S.D. Tex. Feb. 14, 2019). To the extent Plaintiff asserts freestanding claims for a constructive trust, they should be dismissed.

Similarly, "[u]nder the equitable remedy of disgorgement, a person who renders service to another in a relationship of trust may be denied compensation for his service if he breaches that trust." *Marshall v. MarOpCo, Inc.*, 714 S.W.3d 724, 768–69 (Tex. App.—Houston [1st Dist.] 2025, pet. filed). Here, as explained already, Plaintiff has not pled sufficient facts to show that Defendants committed "fraud and forgery," much less that they were "unjustly enriched" by fraud and forgery. Beyond his forgery claim, Plaintiff alleges no facts establishing that Defendants breached his trust. Thus, Plaintiff's claims for disgorgement should be dismissed.

Finally, under Texas law, "unjust enrichment is an equitable theory that allows a party to recover when one person has obtained a benefit from another by fraud,

16

duress, or the taking of an undue advantage." *Allstate Indem. Co. v. Bhagat*, 164 F.4th 426, 435 (5th Cir. 2026) (alteration removed) (quoting *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 665 (S.D. Tex. 2016)). "It occurs when the 'person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain.'" *Id.* (alterations removed) (quoting *Allstate Ins.*, 190 F. Supp. 3d at 665). Again, Plaintiff has not plausibly alleged that Defendants defrauded him, let alone that they wrongfully secured a benefit that would be unconscionable to retain. Thus, to the extent Plaintiff asserts claims for unjust enrichment, they should be dismissed.

## IV.   CONCLUSION

Plaintiff fails to state plausible claims upon which relief can be granted because he alleges no facts that "allow[] the [C]ourt to draw the reasonable inference that the [Defendants] [are] liable for the misconduct alleged." *Gaskin*, 2025 WL 3514356, at *3 (quoting *Calogero*, 970 F.3d at 580). Indeed, Plaintiff fails to allege facts that permit the Court to infer Defendants engaged in any misconduct.

Accordingly, the Court **RECOMMENDS** Defendants' motions to dismiss, ECF Nos. 47 and 49, be **GRANTED** and Plaintiff's amended complaint, ECF No. 42, be **DISMISSED** with prejudice.

Finding dismissal appropriate, the Court further **DENIES** as moot Plaintiff's pending motions. ECF Nos. 71, 72, 73.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error.** *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).

**IT IS SO ORDERED.**

Signed at Houston, Texas, on April 28, 2026.

**Dena Hanovice Palermo**
**United States Magistrate Judge**